# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

DEVINE D. WARD,

            Petitioner,      :      Case No. 3:17-cv-301

  - vs -                            District Judge Thomas M. Rose
                                    Magistrate Judge Michael R. Merz

MARK HOOKS, Warden,
  Ross Correctional Institution,

                                :

            Respondent.

# REPORT AND RECOMMENDATIONS

This is a habeas corpus action brought *pro se* by Petitioner Devine D. Ward to obtain relief from his convictions in the Montgomery County Common Pleas Court on two counts of aggravated robbery and his consequent sentence to twelve years imprisonment, presently being served in Respondent's custody.

The case is before the Court for initial review pursuant to Rule 4 of the Rules Governing § 2254 Cases which provides in pertinent part: "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner."

Petitioner pleads the following grounds for relief:

> **Ground One:** Petitioner is being held in violation of his right to effective assistance of counsel guaranteed by the 5th, 6th, and 14th Amendments to the U.S. Constitution.

**Supporting Facts:** Counsel was ineffective for 1) failing to challenge venireman Clapp, either for cause or peremptorily; 2) failing to renew his Ohio Crim. R. 14 motion for severance, and 3) failing to present a complete defense.

**Ground Two:** Petitioner is being held in violation of his 5th, 6th, and 14th Amendment right to testify in his own defense and in violation of due process and equal protection of the law.

**Supporting Facts:** The joinder of offenses deprived petitioner of his right to testify in his own behalf.

**Ground Three:** Petitioner is being held in violation of his 6th Amendment right to confront the witnesses against him.

**Supporting Facts:** The State introduced into evidence a 911 call from Erron Daniels, the alleged victim of the Nov. 17, 2014 robbery, who did not testify at trial.

**Ground Four**: Petitioner is being held in violation of his right to the effective assistance of counsel on appeal guaranteed by the 5th, 6th and 14th Amendments to the U.S. Constitution.

**Supporting Facts:** Appellate counsel was ineffective for failing to argue: 1. that trial counsel was ineffective for: a. informing the jury that Petitioner was guilty, b. failing to request a dismissal of count two when Erron Daniels failed to show up to court or for failing to ask for a continuance, c. failing to call Tritania Knight as an alibi witness, d. failing to request dismissal after the state's witnesses perjured themselves, e. failing to impeach several witnesses with prior inconsistent statements; 2. failing to argue petitioner's right to confrontation was violated; 3. failing to argue prosecutorial misconduct based upon the prosecutor's knowing use of perjury.

(Petition, ECF No. 3.)

**Procedural History**

Petitioner Ward was arrested for two armed robberies which occurred on consecutive days in November 2014. *State v. Ward,* 2016-Ohio-5354, ¶ 3, 2016 Ohio App. LEXIS 3218 (2nd

Dist. Aug. 12, 2016), motion for delayed appeal denied, 147 Ohio St. 3d 1473 (2016). He was indicted on two counts of aggravated robbery with firearm specifications and convicted by a jury on all counts. The trial court imposed a six-year term for the first robbery, a concurrent four-year term for the second robbery, and two consecutive three-year terms for the firearm specifications. *Id.* at ¶ 7. Ward took a direct appeal to the Ohio Second District Court of Appeals which affirmed the convictions and sentence. *Id.* As noted, the Ohio Supreme Court denied a motion for delayed appeal after no notice of appeal was filed by the due date, forty-five days after judgment in the court of appeals. Ward filed a motion to reopen his direct appeal under Ohio App. R. 26(B) to present claims of ineffective assistance of appellate counsel which was denied as untimely. *State v. Ward,* Case No. 26773 (2nd Dist. Mar. 17, 2017)(unreported; copy available at mcclerkofcourts.org), appellate jurisdiction declined 149 Ohio St. 3d 1408 (2017). Ward avers he placed his Petition for Writ of Habeas Corpus in the prison mailing system on August 4, 2017, but on the same page he says he did not sign the Petition until August 24, 2017 (ECF No. 3, PageID 18).

# Analysis

**Ground One: Ineffective Assistance of Trial Counsel**

In his First Ground for Relief, Ward claims his trial attorney provided ineffective assistance of trial counsel when he did not challenge venireman Clapp for cause or peremptorily,

3

when he did not renew the motion to severe the two offenses, and when he did not present a "complete defense."

Ward's First Assignment of Error on direct appeal raised the claim of ineffective assistance of trial counsel regarding Juror Clapp. The Second District decided the claim as follows:

> [*P8] In his first assignment of error, Ward contends his trial counsel provided ineffective assistance by failing to challenge a particular juror either for cause or peremptorily. The juror in question stated during voir dire that he worked as a delivery driver for a beer distributor and knew people in his profession who had been robbed at gunpoint. He agreed that the nature of Ward's case gave him "some pause for concern." He believed the fact that Ward's case involved the robbery of delivery drivers would make it difficult for him to sit as a juror. When asked whether he could set aside his feelings and judge the case solely based on the evidence, he responded: "I would like to think that I would, but I'm not sure." The juror explained that he had observed the emotional impact being robbed had taken on other drivers. When asked whether that would affect his ability to sit as a juror, he responded:
>
>> I would like to say I would be fair. But I'm saying past experiences and sympathizing with the people and the stuff that's happened to them, knowing what happened to them even though there wasn't a physical thing, mentally and what it's done to their lives up until now, it makes it really hard to, you know, sit on one—and witness going through this again. You know what I'm saying? You know, there's—it's—just for example, there was an older lady that was pistol whipped to give money away and was severely injured and had to spend a year off work. And I was really close to her. And I tell you what, if I'd have got my chance to get a hand on that guy, I would have lobbied some justice. You know?
>>
>> So I'm just saying, it's—being—you know, I'm sympathetic to the carry out people that it's happened to. And through thirty-five years I've had a number of occasions to be close to people that it's happened to. And like I said, just having a—I'm—actually, in my line of work I've had a pistol pointed in front of me. I know the feeling, you know. * * *

(Tr. at 169-170).

[*P9] To prevail on an ineffective-assistance claim, a defendant must show deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To show deficiency, a defendant must show that trial counsel's representation fell below an objective standard of reasonableness. *Id.* Prejudice exists and a reversal is warranted only where a defendant shows a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

[*P10] We find no ineffective assistance of counsel here. We cannot know, of course, why defense counsel failed to challenge the juror at issue, either for cause or through a peremptory challenge. But even if we assume arguendo that defense counsel provided deficient representation by not seeking to have the juror stricken from the pool, Ward cannot demonstrate prejudice. **HN2** "When a defendant bases an ineffective-assistance claim on an assertion that his counsel allowed the impanelment of a biased juror, the defendant 'must show that the juror was actually biased against him.'" (Citations omitted.) *State v. Mundt*, 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 67.

[*P11] In this case, the juror in question never stated that he could not be fair or that he was actually biased against Ward personally, as is required to establish prejudice. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 213. The juror expressed unease and conveyed his belief that the nature of the cause would make it difficult for him to be objective. This is not the same as admitting or acknowledging a personal [**8] bias against Ward, who the juror acknowledged remained innocent in his eyes. We note too that **HN3** the use of peremptory challenges "is inherently subjective and intuitive," meaning that the record rarely will reveal ineffective assistance. (Citations omitted) *Id.* at ¶ 214. Ward's case is one where the record does not. His first assignment of error is overruled.

*State v. Ward, supra.*

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision

5

is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).

The governing standard for ineffective assistance of trial counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins,* 560 U.S. 370, 389 (2010), *citing Knowles v. Mirzayance,* 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

Here the Second District decided the ineffective assistance of trial counsel sub-claim regarding excuse of Juror Clapp by applying the correct federal standard, stated in *Strickland, supra*, It concluded that even if deficient performance were presumed, there had been no showing of prejudice. This was not an objectively unreasonable application of *Strickland*.

Ward's second sub-claim of ineffective assistance of trial counsel is for counsel's failure to renew at trial the motion for severance. This was his Second Assignment of Error on direct appeal which the Second District decided as follows:

> [*P12] In his second assignment of error, Ward asserts ineffective assistance of counsel based on his attorney's failure to renew a Crim.R. 14 motion for severance of the two aggravated-robbery charges during trial.
>
> [*P13] The record reflects that Ward's attorney filed a pretrial motion to have the two aggravated-robbery charges tried separately. The trial court overruled the motion, and defense counsel did not renew the request during trial. Ward argues that his attorney's failure to renew the motion resulted in the waiver of all but plain error and constituted prejudicially deficient performance. We disagree. As explained more fully in our analysis of Ward's third assignment of error below, joinder of the two offenses for trial was appropriate and severance was not required. Because the trial court's denial of the pretrial motion for severance was proper, and we see nothing that would have changed the result if

> the motion had been renewed at trial, defense counsel did not provide ineffective assistance by failing to renew the motion. The second assignment of error is overruled.

*State v. Ward, supra.*

This too was a not unreasonable application of *Strickland*. Because nothing changed between the pretrial denial of severance and trial, nothing would have been gained by renewing the motion and therefore it was not deficient performance to fail to do so. In particular Ward did not suffer the prejudice he claimed of being limited to plain error review on appeal.

Ward's third sub-claim of ineffective assistance of trial counsel is that his trial attorney failed to present a "complete defense." The Petition does not explain what a "complete defense" would have been, but he presented this claim to the Second District on direct appeal as his Fourth Assignment of Error which that court decided as follows:

> **[*P19]** In his fourth assignment of error, Ward alleges ineffective assistance of counsel based on his attorney's failure to present a complete defense. Specifically, he contends counsel provided ineffective assistance by (1) identifying Tationna Knight in a pretrial notice as an alibi witness with regard to the Dragon City robbery but not the Submarine House robbery and (2) subsequently not calling her as a trial witness at all.
>
> **[*P20]** On the record before us, Ward cannot possibly demonstrate ineffective assistance of counsel on either of the foregoing grounds. The appellate record does not reflect why defense counsel did not identify Knight as an alibi witness for the Submarine House robbery or why defense counsel did not call her as a trial witness at all. With regard to the former issue, Knight may have been *unable* to provide an alibi for the robbery of the Submarine House driver. Because the record does not establish that Knight had any alibi testimony to provide about that robbery, Ward cannot show prejudicially deficient representation in counsel's failure to list her as an alibi witness. With regard to counsel's failure to call Knight to provide alibi testimony in connection with the Dragon City robbery, counsel's decision likely was influenced by the fact that Ward already had admitted committing that offense. In light of Ward's confession, defense counsel reasonably could have concluded that calling Knight as an

> alibi witness would be counterproductive. The fourth assignment of error is overruled.

*State v. Ward, supra*. As the Second District held, the record on direct appeal did not establish a number of facts which would have made Ms. Knight a viable witness, particularly what she would have said about the Submarine House delivery driver robbery. Ward did not attempt to establish these facts by filing a petition for post-conviction relief. Here, again the Second District's decision is not an objectively unreasonable application of *Strickland, supra*.

**Ground Two: Improper Joinder**

In his Second Ground for Relief, Ward claims he was denied his right to testify in his own defense by the trial court's refusal to sever the two offenses for trial. Ward raised this claim as his Third Assignment of Error on direct appeal. The Second District decided the claim as follows:

> [P14] In his third assignment of error, Ward argues that the joinder of both aggravated-robbery offenses for trial deprived him of his right to testify on his own behalf. He asserts that he wanted to testify about the robbery of the Submarine House delivery driver but not the robbery of the Dragon City driver. According to Ward, he did not wish to testify about the second robbery because he already had confessed to it. He maintains that the trial court's failure to sever the two robberies for separate trials deprived him of the opportunity to make this choice, effectively forcing him not to testify at all.
>
> [*P15] Upon review, we find Ward's argument to be unpersuasive. "The law favors joinder to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish the inconvenience to witnesses." *State v. Broadnax*, 2d Dist. Montgomery No. 21844, 2007-Ohio-6584, ¶ 33. Here the two

aggravated robberies were permitted to be joined for trial because [**10] they were "of the same or similar character," as required by Crim.R. 8(A). The virtually identical crimes occurred on consecutive days in the same location. They both involved the armed robbery of a delivery driver by a perpetrator who fled in a small black car. Under these circumstances, joinder undoubtedly was proper. *Id.* at ¶ 34 ("Joinder was proper in this case because all of the offenses at issue were of the same or similar character, being aggravated robberies, all were committed within a six day period. All of the offenses involved a similar modus operandi and were committed the same way, and all of the offenses involved a common scheme, plan or course of criminal conduct.").

 [*P16]  When offenses are joined, a defendant still may seek severance under Crim.R. 14. To prevail on a claim that the trial court erred in denying severance, Ward must demonstrate that his rights were prejudiced. "To affirmatively show that his rights have been prejudiced by the joinder, the defendant must furnish the trial court with information sufficient to allow the court to weigh the considerations favoring joinder against the defendant's right to a fair trial, and the defendant must demonstrate that the court abused its discretion in refusing to separate the charges for trial." *Id.* at ¶ 37. A defendant normally cannot establish prejudice, however, where either (1) the evidence of each of the crimes joined at trial is simple and direct or (2) the State could have introduced evidence of one offense in a separate trial of the other offense had severance been granted. *State v. Franklin*, 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991).

 [*P17]  Here Ward has not demonstrated prejudice resulting from the trial court's failure to sever the charges against him. This court rejected an argument quite similar to his in *Broadnax*, reasoning:

> To show that he was prejudiced by the joinder of these aggravated robbery offenses for trial, Defendant complains that he wanted to testify as to the Trotwood Speedway robbery while remaining silent as to the Harrison Township robberies. Defendant claims that, as to the Trotwood robbery, he wanted to provide the jury with the same explanation he gave to police for why he was in the Buick Regal they stopped just five minutes after the Speedway station was robbed, and why he ran from police. Defendant further claims that as to the Harrison Township robberies, he intended to present an alibi defense for those offenses, and he wanted to avoid exposing his prior criminal record to the jury.

> Defendant has not made a convincing showing that he had important testimony to give concerning one charge and a strong need to refrain from testifying concerning the others. *State v. Roberts* (1980), 62 Ohio St.2d 170, 176, 405 N.E.2d 247. The mere possibility that a defendant might desire to testify on one count and not the other is insubstantial, speculative, and insufficient to show prejudice. * * * Further, the prejudice Defendant suggests is not in the jury's confusion of the facts concerning the multiple alleged offenses, but in disbelieving his alibi defenses if his testimony concerning other offenses caused the jury to reject his credibility. That is merely a tactical concern, not one relating to the fairness of Defendant's trial.
>
> More importantly, Defendant was not prejudiced by the joinder of these robbery offenses for trial because the evidence pertaining to each offense is simple and direct. * * * All of the robberies involve different stores and different witnesses. Witnesses in each of the robberies independently identified Defendant as the robber. We find the evidence as to each offense is straight-forward and uncomplicated. Under those circumstances, it is improbable that the trier of facts would confuse the evidence or improperly consider the testimony concerning one offense as corroborative of the other offenses. * * * Defendant fails to affirmatively demonstrate prejudice resulting from the joinder of these offenses for trial. We cannot find that the trial court abused its discretion when it denied Defendant's motion to sever the charges.

*Broadnax* at ¶ 39-41.

 [*P18]  We reach the same conclusion in Ward's case for at least three independent reasons. First, he has not made a convincing showing that he had important testimony to give concerning the robbery of the Submarine House driver and a strong need to refrain from testifying about the robbery of the Dragon City driver. Ward has not identified what his testimony would have been with regard to the first robbery. Furthermore, it is unclear why his confession to the second robbery created a strong need for him to refrain from testifying in that case. He simply could have admitted to the jury what he had admitted to the police while still maintaining his innocence with regard to the first robbery. Indeed, his willingness to admit one of the robberies seemingly would have made his denial of the other one more credible. Second, the motion for

11

> severance Ward filed below failed to cite his desire to testify in just one of the two cases as a basis for finding prejudice. (*See* Doc. #28, 35). Because Ward did not even mention this argument below, he necessarily failed to provide the trial court with information sufficient to allow it to weigh the considerations favoring joinder against his right to a fair trial. Third, our review of the record convinces us that Ward was not prejudiced by the joinder in any event because the evidence pertaining to each offense was simple and direct, and the evidence from one would have been admissible in the other. Accordingly, his third assignment of error is overruled.

*State v. Ward, supra*. Because Ward presented no basis to show he would be prejudiced by failure to sever and particularly how joinder prevented him from testifying about the Submarine House robbery, the Second District's decision that there was no constitutional violation involved is not an objectively unreasonable application of clearly established Supreme Court precedent.

**Ground Three: Violation of Right to Confrontation as to Witness Erron Daniel**

In his Third Ground for Relief, Ward claims his right to confront witnesses was violated when the trial court admitted an out-of-court statement of witness Erron Daniel. Ward raised this claim as his Fifth Assignment of Error on direct appeal and the Second District decided the claim as follows:

> **[*P21]** In his fifth assignment of error, Ward contends the trial court violated his Sixth Amendment confrontation rights by allowing the State to introduce into evidence a partial recording of the 911 call from Erron Daniel, the victim of the Dragon City robbery, who did not testify at trial.
>
> **[*P22]** Ward objected to the recording being admitted, arguing that Daniel's statements on the recording were testimonial in nature. Over Ward's objection, the trial court admitted a portion of the recorded call into evidence, concluding that the primary

purpose of Daniel's statements was to address an ongoing emergency and, therefore, that the statements were non-testimonial. That being so, the trial court found no Sixth Amendment violation.

 [*P23]  On appeal, Ward asserts that no emergency was in progress and no immediate threat existed when Daniel made his 911 call. To the contrary, Ward contends that Daniel and the perpetrator both had left the scene of the robbery when the call was made. Ward notes too that Daniel said he was unharmed during the call. Daniel also had spoken with his employer before dialing 911. Under these circumstances, Ward asserts that Daniel's statements on the 911 recording were testimonial, making their use at trial in his absence a violation of his confrontation rights.

 [*P24]  Upon review, we find Ward's argument to be unpersuasive. "The U.S. Supreme Court has recognized that a defendant's Sixth Amendment right to confront witnesses against him is violated when an out-of-court statement that is testimonial in nature is admitted into evidence without the defendant having had the opportunity to cross-examine the declarant." *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio- 302, ¶ 26, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Testimonial statements include statements "'that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Kelley*, 2d Dist. Clark No. 2011 CA 37, 2012-Ohio-1095, ¶ 58, quoting *Crawford* at 52. "'[S]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" *Eicholtz* at ¶ 26, quoting *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006), paragraph one of the syllabus. "Typically, 911 calls made to report an ongoing emergency that requires police assistance to resolve that emergency are not 'testimonial' in nature and therefore the Confrontation Clause does not apply." (Citations omitted.) *State v. Mc Daniel*, 2d Dist. Montgomery No. 24423, 2011-Ohio-6326, ¶ 24.

 [*P25]  The portion of the 911 call played for the jury is one minute and twenty seconds long. Daniel can be heard telling the

911 operator that he had "just" been robbed at gunpoint near Arlene Avenue and Prescott Avenue while making a delivery. He reported the direction that the perpetrator had fled. He also described the perpetrator as a black male in a black hoodie who had fled in a small, black Mazda or Toyota. Finally, he gave the operator his own name. Elsewhere in the full recording of the 911 call, Daniel reported that he was unharmed and that the robbery had occurred no more than two minutes earlier. The tone and volume of his voice suggested that he remained under the stress and excitement of the incident.

 [*P26]  In rejecting Ward's confrontation argument, the trial court reasoned:

> In the first place the Court would start as I've listened to the part of the tape with counsel that the State intends to play, it's clear to me that Mr. Daniel['s] utterances are excited based on his voice and the nature of the call and listening to it. It's clear to me that it's certainly a present sense impression. It happened within moments of the call. So those two hearsay exceptions would put it in.
>
> And then you get to the primary purpose. And what is the primary purpose? And I believe, again, as [defense counsel] accurately states, you got to look at the totality of the circumstances but I think objectively the primary purpose was to deal with an ongoing emergency, that is, an armed guy that just robbed somebody at gunpoint and whether they're still in the proximity. And I think that's an emergency.
>
> And I will also say, listening to the tape, I think there's virtually a complete absence of interrogation by law enforcement. Almost entirely what's on the tape is what's being volunteered on this call.
>
> Now, so therefore, the Court's going to rule that this is nontestimonial in nature. It was a call made in response to an emergent situation that had not been resolved. To suggest that once the person flees there's no longer an emergency I think is a much too narrow drawing of the exception or what's emergent versus non-emergent and I'm not going to do it. * * *.

(Tr. at 335-336).

 [*P27]  We agree with the trial court. Although Ward has not raised a hearsay argument on appeal, we harbor no doubt that

14

Daniel's statements qualified as excited utterances and, therefore, were admissible under the Ohio Rules of Evidence. With regard to the Confrontation Clause, we note that "whether an emergency exists and is ongoing is a highly context-dependent inquiry." *Michigan v. Bryant*, 562 U.S. 344, 363,131 S.Ct. 1143, 179 L.Ed.2d 93 (2011). The mere fact that Daniel was unharmed and that the perpetrator had fled the immediate location did not negate the existence of an ongoing emergency. "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.*

 **[*P28]** The primary purpose of the 911 call here was to assist police in apprehending a dangerous criminal who had just robbed Daniel at gunpoint before fleeing into the night. These circumstances presented a continuing emergency situation. *See United States v. Hayden*, 612 Fed.Appx. 381, 384 (7th Cir.2015) ("[T]he 911 call at issue and statements to police were non-testimonial because their primary purpose was to provide police officers with basic information to address an ongoing emergency. The statements occurred within minutes of the robbery while an armed suspect was still fleeing the scene and they provided only basic information that might enable police to capture the suspect. The content of the call was limited to informing police that a robbery had occurred; the location of the robbery; that the robber wore a gray and black striped shirt; that the robber was armed; and that the robber fled in a certain direction. For this reason, the statements were clearly non-testimonial and it was proper for the trial court to allow them into evidence."); *see also Cleveland v. Merritt*, 8th Dist. Cuyahoga No. 103275, 2016-Ohio-4693, ¶ 10, 19 (recognizing that an ongoing emergency situation can exist after the perpetrator has left the scene if a potential threat to the police or the public remains).

 **[*P29]** Finally, nothing in the 911 recording indicates that Daniel had traveled far from the scene of the robbery, if he had left it at all when he made his 911 call, and the fact that he had spoken to his employer before calling 911 was inconsequential. The full 911 recording reflects that Daniel's boss *called him* just before he called 911, which resulted in him hanging up to place the emergency call. Based on the foregoing reasoning, we overrule Ward's fifth assignment of error.

*State v. Ward, supra.*

The analysis of the Second District carefully tracks the distinction between testimonial and emergency communications with law enforcement which the Supreme Court has recognized in the wake of *Crawford v. Washington, supra*. See *Michigan v. Bryant*, 562 U.S. 344 (2011).

**Ground Four: Ineffective Assistance of Counsel on Direct Appeal**

In his Fourth Ground for Relief, Ward claims he received ineffective assistance of appellate counsel in several respects. Ward presented these claims to the Second District Court of Appeals in his Application for Reopening under Ohio R. App. P. 26(B). Under Ohio law that is the proper, and only, forum for raising claims of ineffective assistance of appellate counsel. *State v. Murnahan*, 63 Ohio St. 3d 60 (1992). *Manning v. Alexander*, 912 F.2d 878 (6th Cir. 1990), which had said Ohio Revised Code § 2953.21 was available, explicitly disapproved. "In Ohio, claims of ineffective assistance of appellate counsel are not cognizable in the normal course of post-conviction proceedings, and must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B)." *Carter v. Mitchell,* 693 F.3d 555, 564 (6th Cir. 2012).

However, Ward's 26(B) Application was filed outside the time allowed for such motions under Ohio law. His claims of ineffective assistance of appellate counsel are therefore procedurally defaulted.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual

16

> prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle*, 456 U.S. at 110; *Wainwright*, 433 U.S. at 87. *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963). *Coleman*, 501 U.S. at 724.

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*); *Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357 (6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002).

In noncapital cases, the timeliness rule for filing a 26(B) application is an adequate and independent state ground of decision. *Parker v. Bagley,* 543 F.3d 859 (6th Cir. 2008)(noting that *Franklin* was a capital case); *Scuba v Brigano*, 527 F.3d 479, 488 (6th Cir. 2007)(distinguishing holding in capital cases); *Monzo v. Edwards*, 281 F.3d 568 (6th Cir. 2002); *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), *citing Rideau v. Russell*, 2009 WL 2586439 (6th Cir. 2009).

Since 1996, "Ohio law has provided sufficient guidance on what constitutes a 'good cause' for a late filing under Rule 26(B)," and "'the time constraints of Rule 26(B) [have been] firmly established and regularly followed.'" *Wogenstahl v. Mitchell*, 668 F.3d 307, 322 (6th Cir. 2012), *quoting Hoffner v. Bradshaw*, 622 F.3d 487, 504-05 (6th Cir. 2010) (*quoting Parker v. Bagley*, 543 F.3d 859, 861 (6th Cir. 2008)). Thus, Rule 26(B) is an adequate and independent ground on which to find procedural default. *Id.*

Here the Second District enforced against Ward the ninety-day time limit for filing, concluding he had not shown good cause for being late. Ward has offered in his Petition no suggested cause to excuse this procedural default.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein

be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

September 1, 2017.

s/ *Michael R. Merz*<br>United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. .Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).